The next case on our call this morning is Agenda No. 2, Case No. 104-084, People of the State of Illinois v. Jamyra E. Bew. Mr. Iskiewicz, ready to proceed? Good morning, Your Honors. Mr. Cohut, may it please the Court, my name is David Iskiewicz and I'm with the Illinois Attorney General's Office on behalf of the people in this case. In 2002, the defendant Jamyra Bew was pulled over for a minor traffic violation and during the course of that violation, it was discovered that she was driving on a suspended license. While the officers wrote out citations for these offenses, they called in a canine unit to do a routine dog sniff around her impounded vehicle. During that dog sniff, it was discovered that there was marijuana located in a suitcase in the trunk of her car. She proceeded to bench trial and was convicted of possession of narcotics with the intent to deliver. On appeal, she argued that her trial attorney was ineffective for failing to move to suppress the evidence found in the trunk of her car under this Court's decision in People v. Cox. In Cox, this Court held that absent clear, reasonable, and articulable suspicion of criminal activity with respect to a vehicle, it's impermissible under the Fourth Amendment to conduct a dog sniff around the vehicle. The appellate court held that trial counsel was in fact ineffective under Cox given the absence of any articulable suspicion that anything was going amiss in the car. After the appellate court rendered its decision in that case, the United States Supreme Court decided Illinois v. Cabalas. In Illinois v. Cabalas, the Supreme Court held that there need not be any articulable suspicion to conduct a dog sniff around a vehicle so long as that dog sniff doesn't unreasonably prolong the detention or the episode at issue. The People filed a petition for leave to appeal in this Court and cited Cabalas v. Illinois in support of reversal. This Court declined to issue the PLA but did enter a supervisory order instructing that the appellate court reconsider. It vacated the decision and instructed that it reconsider that decision in light of Illinois v. Cabalas. The appellate court, however, again cited to the articulable suspicion test and granted the defendant's argument that trial counsel was ineffective for failing to move to suppress under Cox. Once again, this Court granted the People's PLA and should now reverse the appellate court. As noted in Cabalas, the Supreme Court held that the police need not have articulable suspicion to conduct a dog sniff during an otherwise lawful traffic stop so long as that dog sniff doesn't unreasonably prolong the detention. That's exactly what happened here on the facts in the record. Let me just, I'm going to try to find out where this case falls within the duration spectrum. Yes, Your Honor. In Cox we held that 15 minutes detention to call for a canine sniff was too long and this was cited favorably by the Supreme Court in Cabalas. Then in Cabalas, after Cabalas rather, Triggers, we approved of a five minute detention. Here we have testimony from the officers that the canine was called and arrived at the scene five to ten minutes after the defendant was placed in the squad car. So we really don't know the entire duration of the stop, do we? Well, we do know, Your Honor, that as Officer Prochaska and Officer Walsh were writing out citations and the defendant was in the backseat of the vehicle, the canine sniff was going on. I'm talking about the time before they were placed in the car. We only have a time in the evidence. The only time given is the ten to fifteen, five to ten minutes after they were placed in the car. We don't know how long they were in their car before placed into the policeman's car. We don't know that, Your Honor. We do know that the relevant... Do you think that remand to determine that would be important? I don't think so on this record, Your Honor. We have a record showing that the defendant was pulled over. It was discovered within a few minutes that she was driving on a suspended license. She was placed in the backseat of the car during the encounter in the car while the officers were doing all they needed to do to affect the citations. The state is asking for seeking remand as well? Yes, Your Honor. On another issue? There's one issue outstanding, Judge. Inevitable discovery? The issue outstanding is actually a sufficiency of the evidence challenge that the appellate court did not address in the first instance, but we do argue that if this court doesn't agree with our Kabbalist analysis and the Kabbalist controls, that the evidence would have been otherwise discoverable under an inventory search. Now, if the court doesn't think... Both sides are in effect, but on different points, seeking remand for these questions to be cleared up. Wouldn't you think that remand would be the thing to do in this case? Judge, I respectfully disagree with respect to the Kabbalist analysis. I think the record is more than adequate to show that the dog sniff occurred during the duration of an otherwise lawful traffic stop, which Kabbalist allows. Do we know the time that the defendant was still remaining in his own car before being moved to the police officer's car? All we know is that the defendant was in her vehicle and then was moved to the officer's car. We don't know that time? There's no duration of time that's in the record. You don't think it's important to establish that as well in terms of the time duration? I don't think so, Judge. I think what we have here is a clear enough duration of time. So if the defendant sat in his car for half an hour before the police removed him back to the police car, that would be okay? Judge, Justice Freeman, as long as the officers were writing citations, doing further checkups, investigating the case further, then a half hour certainly would be acceptable. What is not acceptable is if the officers hold her there while doing nothing and then call in a canine unit. That would be somewhat problematic even under Kabbalists and under Cox, which wasn't overruled on the unreasonable prolongement question. But I think we do have here a very clear record that during all the duration of the stop, the police officers were doing business with respect to the stop on crossing the crosswalk and then doing the citations with respect to the suspended license and lack of insurance. And the record's clear that while they were processing these citations, the canine unit went around her stopped vehicle. And at that point, the marijuana was discovered. This isn't a case, Your Honor, where the officers held her there for a duration of time and then waited for the canine. Is there testimony covering that period of time when the defendant remained in their car? There is, Judge, but I don't know for how long because the officers went back to check her license and then they discovered that she was driving on a suspended license. There's nothing in the record that says it took me two or three minutes to go to her car and then return to my car. There is testimony that the duration of the stop was about 5 to 10 or 10 to 15 minutes. And during the entire, and this is the important point here, during that time, they were processing these citations. And while in the course of this police business and doing their business incident to this stop and nothing else, that's when the canine unit went around the car. And Caballa says that's okay. The appellate court should have recognized that this was okay and should have denied the defendant's Sixth Amendment claim. The defendant does argue that trial counsel's failure to recognize the precedential value of Cox at the time of trial hindered his ability to enter into meaningful plea negotiations. And the defendant cites to this court's case in People v. Curry for this proposition. The defendant's reliance on Curry, however, is misplaced. In Curry, this court found that trial counsel was ineffective at trial for failing to grasp the nuances of the consecutive sentencing statute. On appeal, the appellate court held that that consecutive sentencing statute was somewhat unclear and that trial counsel cannot have been ineffective where there was some ambiguity in the applicability of that consecutive sentencing statute. This court held, though, that trial counsel was ineffective because there was no change in the law following her appeal and trial that would have, I guess, excused counsel's failure to grasp the applicability of that statute. And that to grant the defendant's Sixth Amendment claim in light of that solid, unchanging statute was not appropriate. Here, by contrast, the appellate court granted the defendant's Sixth Amendment claim based upon law that's not good. This amounted to an undeserved windfall under Lockhart v. Fretwell and should be reversed. Moreover... Counsel, at what point do we measure prejudice to the defendant? Do we measure it at the time of the alleged deficiency or do we measure it on the likely outcome at this point in time? Well, Judge, this court has held that such questions must be analyzed in light of subsequent case law. So on appeal, the appellate court should have recognized following this court's vacating of the first opinion, it should have applied the new law derived from Illinois v. Cabalas on appeal and should have applied it then to determine the prejudicial effect. And under Lockhart, the question is whether the proceedings were fair and reliable. Nothing on this record indicates that they were unfair or unreliable. The defendant only points to this plea process, which I mentioned earlier. The plea process, though, in this record is really unsubstantiated. There is a mention during a pretrial conference of the possibility of a plea negotiation, but those comments are sandwiched between an affirmation by trial counsel that the case was going to be going to trial and that the defendant was going to be waiving her jury. So there's really no substantial or meaningful evidence in this record of any plea negotiations going on that would have come to fruition. And that is also unlike in Curry, where this court was able to gauge prejudice because the record showed that trial counsel was, A, unaware of the consecutive sentencing laws, and, B, the defendant himself testified at a post-trial hearing that he would have accepted a plea by the state. And the other flaw with the defendant's plea argument is this. During all of his appeals, the defendant has consistently maintained that had counsel been aware of Cox and the precedential value of that case at trial, he would have been able to somehow force the state's hand and would have been able to engage in more meaningful plea negotiations. But let me back up. The defendant has consistently argued that had counsel been aware of Cox, he would have moved to suppress the evidence and the state would have been forced to dismiss the charges. Now he argues that counsel should have used Cox to influence or obtain some benefit from negotiating a plea agreement with the state. But if counsel had Cox at his disposal at trial and would have used that to enter plea negotiations, that would have been much more ineffective than counsel's alleged inability to recognize the precedential value of Cox. If counsel had said to his client, we can either use Cox to enter a plea or use Cox to get the charges dismissed, and had gone on to use Cox to have the plea negotiated, that would have been much more ineffective than having the charge dismissed. So that argument doesn't hold water. If this Court doesn't agree with the Caballa's line of argument in our brief, I've already mentioned that this evidence would have been admissible under the inventory search exception. At least four or five times in this record, different officers testified that in accordance with Joliet police policy. They were prepared to inventory and tow the vehicle. And undoubtedly during that inventory, the marijuana would have been turned up in the defendant's trunk. The defendant says that there was no testimony that the police would have opened containers in the trunk. But this Court has held in Gibson and in Hundley that explicit testimony regarding opening containers found in a vehicle is not necessary to obtain evidence found in those containers. The testimony unrebutted. Is that the policy of the police department there if there's another eligible driver present in the car, not charged with anything, who's willing and able, licensed to take the car somewhere for the defendant? I don't know, Judge. It's not in the record, but I do know that the defendant's passenger was also arrested at the time. So it wouldn't have been possible for her to take it. So we do think that the inventory exception applies here if the Court's uncomfortable with our Cabalas analysis. And if there are no further questions, we ask that the Court reverse the appellate court's judgment and remand for consideration of the remaining findings. The defendant was charged as well. Is that correct? The defendant? The defendant's passenger, Your Honor? I'm sorry. The defendant herself was charged. The defendant herself. Sure. The class A misdemeanor. The traffic? Driving on a suspended license? Judge, Your Honor, I don't know the answer to that question. I do know that the dispositive conviction is... Do you know what happened to the defendant after the police were through? Was he taken to the police station? Correct. They took the defendant to the police station, after which she gave a confession to owning the drugs found in the trunk. Beyond that, did he make bond on whatever he was charged with? I don't know, Your Honor. Would that have any effect on judging what the duration of the stop was? It wouldn't, Your Honor. Whether or not the defendant was arrested for a misdemeanor or any crime? It wouldn't, Your Honor. As long as the defendant was being processed for citations and during the stop, not unreasonably prolonged, the keen eye sniff occurred. In determining whether there was a duration period measured by a 15-minute standard set, once he's arrested for the misdemeanor, does that 15-minute standard, is that something we still shouldn't use to give an analysis of the duration? I don't. If I follow Your Honor's question, it's that... In most traffic stops, the defendant is not going to be arrested. Right. He's going to get a ticket and he's going to be on his way. Right. In this traffic stop, that was not the case. Right. Are those, in evaluating the duration of a traffic stop, does it make any difference that the defendant is actually arrested? It doesn't, Your Honor. It does not, okay. As long as the stop isn't unreasonable, even if it's for a misdemeanor and she's going to be let go, as long as during the duration of that stop, the canine is brought around and they're not holding her there just to do the canine. This is a part of the... I wonder if you're answering my question, because is the duration longer when somebody's arrested for a misdemeanor than it is when they're arrested for a red light? I don't know, Your Honor. Okay. Thank you, Mr. Iskowitz. Thank you. Mr. Cohut, is that pronounced correctly? Cohut. Cohut. May it please the Court. Good morning, Your Honors. Counsel. My name is Brian Cohut, and I represent Mr. Marabu in this case. Mr. Cohut? Yes, Your Honor. Is it a fair... Well, let me put it this way. We remanded for reconsideration in light of Khabib's, right? That's correct. Through a supervisory order. Is it a fair statement that what we got back from the appellate court was an analysis in light of Cox? Ms. Pugh maintains that the appellate court's holding was correct and that her conviction should be reversed. Right, but my specific question is, maybe this will help us out to make our supervisory orders clearer, but we said that we were asking the appellate court to reconsider in light of Khabib's. So my question is, did we get back from the appellate court an analysis, instead of looking at the facts and circumstances in this case in light of Khabib's, we get back an analysis of the facts and circumstances of this case in light of the Cox decision? Is that what we got back? I think the... I know you think it was right, what they did. Okay, okay. I'm just thinking, I'm just asking, did they do what we told them to do? I do not believe so. Okay. Well, I appreciate your frankness. We'll try to make it better the next time. All right, go ahead. Your Honors, this case is about a criminal defendant whose trial attorney failed to research this court's case law, failed to recognize binding precedent specifically on point and beneficial to the defendant, and the resulting effect of counsel's incompetence on pretrial motions, plea negotiations, and the entire proceeding in general. Your Honors, I would like to, at this point, answer a question that was raised by Justice Freeman with regards to the duration of the stop. Had defense counsel raised a motion to suppress under Cox, this question, as well as many other questions, would have been answered on the record. However, he did not, and he performed efficiently in failing to present that motion to suppress evidence. Here, upon remand, Ms. Beu is asking for the benefit accorded to her by the Constitution, the effect of assistance of counsel in exploring potentially meritorious issues and properly presenting them, including the duration of the traffic stop here. So then we get to the inevitable discovery that the State has raised. Yes, Your Honor. And they didn't get a chance to present any evidence. That's correct, as well. So one question really leads to the other. Does remand appear to be the answer? Ms. Beu maintains a yes. The cause properly should be remanded for further proceedings. Counsel, if we wouldn't affirm the appellate court here, essentially award the defendant a windfall, isn't that a windfall? No, Your Honor. It would not amount to a windfall for Ms. Beu, because Ms. Beu is not asking that this court allow her to rely on Cox on remand. The windfall language appears in Lockhart v. Fretwell. In that case, the defendant, Fretwell, alleged ineffective assistance of counsel for counsel's failure to recognize and object to what's considered double counting. That's the introduction of a factor in aggravation that is inherent in the offense. During sentencing, pursuant to a case that was decided prior to the sentencing proceeding, the Collins case. By the time Fretwell's case reached the Supreme Court, this Collins case had been reversed and double counting was no longer improper. The Supreme Court held that giving Fretwell relief would amount to a windfall. The court was careful, however, to observe that counsel's deficient performance is to be assessed at the time of the alleged error. Indeed, in that case, the state conceded that counsel's performance was deficient. However, the court held that Fretwell could not rely on an improper interpretation of the law to establish prejudice, this Collins decision. Since double counting was not, and essentially never was, improper, Fretwell was not prejudiced by counsel's failure to make the double counting objection. There, the court held that this would amount to a windfall because he never should have been able to raise that objection. But the court did distinguish between the performance prong and the prejudice prong of Strickland in that analysis. The court noted that performance is to be assessed at the time of the alleged deficiency. Here, Ms. Bew relies on Cox to show that counsel performed deficiently by failing to present Cox as a bargaining chip. However, her prejudice argument relies on this court's decision in Curry. Ms. Bew is arguing that but for counsel's failure to present a bargaining chip pursuant to Cox's deficient performance, there is a reasonable probability that the result of the proceeding would have been different because the state would have given her a more favorable offer and she would have accepted it. How do we know that, counsel? Ms. Bew maintains that had trial counsel presented the state with this meritorious motion, under Cox, it clearly stood a reasonable probability of success, that the state would have offered a more favorable deal based with that suppression of evidence that was critical to the case. They're faced with the potential of obtaining no conviction at all. Well, isn't that pretty speculative? I mean, if she wins the Cox motion, isn't the case going to be dismissed? Yes, if she does, if counsel were effective and he presented that Cox motion, had it been granted, she would have won the case. That's correct, Your Honor. However, the state's contention on this point ignores their second issue briefed before this court, whether the evidence would have been inevitably discovered. Although Ms. Bew maintains that the evidence would not have been inevitably discovered, the state presents what would amount to as a contentious issue during a motion to suppress evidence. Ultimately, there's no guarantee that this motion would have been granted. Is there anything in the record to indicate negotiations were ongoing? Ongoing per se. Okay. Or any kind of negotiations in this case? Well, defense counsel informed the court that he had received a phone call, and as a result of this phone call, there may be a plea in this case. From the context of his statement, it shows that the state had extended an offer to Ms. Bew. Ms. Bew was, therefore, either to reject the offer, accept it, or counter it. Thus, Ms. Bew maintains that this offer amounted to plea negotiations. She could have countered the offer. She should have countered the offer. As far as the second prong of Strickland goes, prejudice, I mean, it seems to be a tough argument, and I believe Mr. Iskowitz touched on it, to say that there's prejudice to the defendant in the sense that counsel didn't get a better deal when he may have gotten an outright dismissal. And I know you're saying, well, it's not only on this issue, it's also on the inevitable discovery issue, but they could have won on both issues. But even on the first prong, why wouldn't that be trial strategy as well, where the defense counsel makes a determination that I think we have a better chance of getting the whole thing to get a better deal? He certainly could have done both. If the state rejected his use of Cox as a bargaining chip, then he should have filed that motion to suppress under Cox. Can we get back to, just for a minute, Mr. Kohut, the appellate court looking at Cox when we told them to look at Cabayas? Their decision, the appellate court herein, their decision, the belief that the police need some type of independent suspicion of the presence of contraband in the vehicle before being justified in conducting the sniff, that was repudiated by Cabayas. So after Cabayas, there was no independent justification for using a canine unit during a traffic stop as required as long as the canine sniff is performed during the time frame, and that's what we're, of the legitimate stop. So we're talking about duration. So on only the Cabayas issue, if this court feels there's no question as to the duration, is there any remand necessary on that issue? Solely on the Cabayas issue, there are potentially meritorious issues that should have been investigated by counsel in this case. Whether they rise to the, Ms. Bue does not speculate that they do rise to the level of ineffective assistance of counsel, such as the adequacy of the canine handler's training or the accuracy of the dog in this case, which are questions that were raised by the Cabayas court. However, these are potentially meritorious issues that counsel. Was that ever raised before just now, those issues? That's raised in Ms. Bue's opening brief before this court. Had counsel performed, had counsel not performed efficiently and filed this Cox decision, we would have had a complete record with regard to all these potential issues, the duration of the stop, the adequacy of the handler, the canine's accuracy, and other issues noted in defendant's opening brief. So I think that on remand, there are potentially still potential issues under Cabayas. Counsel, was there, based on the factual record in this case, was there consent to open the trunk? No, Your Honor. That does not, consent to open the trunk does not appear on the record. The officers testified that they walked the canine around the vehicle, the canine hit on the trunk, and then they obtained the keys and opened the vehicle. It's not clear. Let's stop there. How did they get the keys? Did they make a request? Did they order it? Did she volunteer the keys? That's not clear from the record, Your Honor. It's not clear whether they obtained them from the police officer who stopped her and initiated the tow procedure or if they received them from Ms. Bue. According to the state's brief and the statement of facts, once the trunk was opened, she then gave permission to open the suitcase even though apparently she said it wasn't her suitcase. That was after the dog had hit on the trunk. Right. The officers removed the suitcase, placed it approximately 15 feet away from the vehicle, and had the dog sniff it the second time. It's not clear at what time during this entire process they requested Ms. Bue's permission to open that suitcase. We don't know from the record if it was after the dog sniffed the suitcase, hit on it, and then the police officers contacted the state's attorney's office and received permission to open the suitcase. It's possible that they then asked her whether they can open the suitcase. At that point, she maintained it wasn't her suitcase. Isn't that right? Again, it's not entirely clear from her statement what she precisely said. She said that it was her cousin's suitcase, but it was hers, which is essentially what she said. So it's not entirely clear. She did not admit, say, yes, this is my suitcase, or clearly did not. Did she at any time? She did at the police station. She did give a statement indicating knowledge and possession of the suitcase, the cannabis in her trunk. One thing I would like to address before this court is the state's forfeiture argument. The state argues that Ms. Arbu has forfeited this issue. However, the law regarding performance of a canine sniff has changed. When the law changes to the defendant's detriment, such as in the present case, the appropriate analysis is found in Lockhart. The Lockhart prejudice analysis asks whether the defendant was deprived of any substantive or procedural right to which she was entitled. Thus, the holding in Lockhart anticipates and invites presentation of alternative theories to demonstrate prejudice that may not have been originally raised. Therefore, this issue has not been forfeited, Your Honors. If there are no further questions from the court? Something I've got, maybe you can refresh my memory. When Cox was written, it was based upon Illinois constitutional law. Is that correct? It does cite to the Illinois Constitution, but as well, it does cite to Terry. Cabalas was not based upon Illinois constitutional validation. It wasn't, it wasn't. It was not specifically based on the Illinois Constitution. There's no mention of the Illinois Constitution in Cabalas. It does, however, cite to Cox. So when we remand it to the appellate court, could they have reviewed this under Illinois constitutional law rather than the federal court's position in Cabalas? Well, I think that that argument would have been precluded by this court's second holding in Cabalas. For the foregoing reasons, Your Honor, Ms. Bue respectfully requests that this Honorable Court affirm the decision of the appellate court, reverse her conviction, and remand for further proceedings. Thank you, Your Honor. Thank you, Mr. Pruitt. Rebuttal, Mr. Iskalos. Thank you, Your Honors. Just to clear up a factual point here that was brought up during my able opponent's oral argument, Ms. Bue gave her consent to open the suitcase after Officer Walsh's, excuse me, Officer Olson's canine hit on the suitcase. So to reiterate, the canine hit on the suitcase. The officers asked Ms. Bue, the defendant, if they could open it. She said yes. Was that before or after the state's attorney had been contacted? The state's attorney was contacted first and said that it was okay to open it. Then they went to Ms. Bue and she said it was okay to open it as well. Just to reiterate a point here that's been raised by the court and by my opponent, his plea argument doesn't make any sense if this court were to review it again. I mentioned this in my opening argument. He's maintained consistently that Cox would have resulted in the dismissal of the charge. It would have made no sense for his attorney to use Cox to enter into plea negotiations if using Cox would have ended the case immediately. So his plea argument has no merit. And again, Cox, I'm sorry, Curry is distinguishable by the salient fact that the change in law that the state argued had occurred on appeal did not, in this court's opinion, in fact happen. The sentencing laws remain the same. Counsel's performance at trial remained ineffective. Here, by contrast, we have significant shift in the law governing canine sniffs. And to give the defendant the benefit of the preexisting law on this record would amount to a windfall undeserved under Lockhart. If this court doesn't have further questions, we respectfully request that it reverse the appellate court's judgment and remand for reconsideration or consideration in the first instance of the sufficiency of the evidence argument. Thank you, Mr. Esposito. Thank you, Your Honor. Thank you, Mr. Cohan. Case number 104-084, People of the State of Illinois v. Jamyra E. Bew, is taken under advisement as agenda number two.